IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **v.** | ) | **Criminal No. 04-291** |
| | ) | <span style="color:red">**Electronically Filed**</span> |
| **DERRICK KENRICK** | ) | |
| **a/k/a CHARLES SALTER, a/k/a** | ) | |
| **CHARLES SAITER** | ) | |

## <u>RULINGS AND FINDINGS REGARDING<br>DISPUTED SENTENCING MATTERS</u>

**AND NOW**, this **14ᵗʰ day of December, 2007**, for the reasons to follow, after careful

consideration of the decision of the United States Court of Appeals for the Third Circuit, the

memoranda of the parties with respect to matters in dispute, evidence submitted and argument of

counsel at the resentencing hearing of December 13, 2007, and the entire record from the original

sentencing proceeding, including the unambiguous terms of the Plea Agreement and the

unchallenged facts and calculations of the Presentence Report, the Court will reaffirm the

lifetime term of supervised release because: (i) a term of lifetime supervised release is an

integral component of a sentence of at the "upper end of the guideline range," as the parties

agreed in their Plea Agreement; (ii) the maximum lifetime term of supervised release

counterbalances the otherwise too lenient term of imprisonment, 46 months, to which the parties

agreed and the Court accepted; (iii) lifetime supervision is the appropriate term of supervision

under all of the facts and circumstances of record, as set forth more fully herein; (iv) lifetime

supervision is the recommended term of supervision for sex offenders such as Derrick Kenrick,

according to section 5D1.2(b)(2) of the Sentencing Guidelines and the applicable policy

statement accompanying that section; and (v) defendant did not object to the calculation by the

Probation Office in the Presentence Report stating that a lifetime term of supervision was the

recommended term of supervised release.

# I.  Background

## A.  Guilty Plea/Agreement

### 1. In General

Defendant pled guilty on July 7, 2005, to one count of "Travel with Intent to Engage in Illicit Sexual Conduct," in violation of Title 18 of United States Code, Section 2423(b), pursuant to a written plea agreement.  The Plea Agreement, in paragraph C.1, stated the maximum "penalty that may be imposed upon Derrick Kenrick" as follows:

(a) A term of imprisonment of not more than thirty (30) years;

* * *

(c) A term of supervised release of up to life, 18 U.S.C. §3583(k) ; . . . .

### 2. Agreement That "A Sentence at the Upper End of the Guideline Range Is Reasonable in this Case"

Paragraph C.3 of the Plea Agreement set forth the parties' stipulation that the 2004 Sentencing Guidelines were applicable, that the base offense level pursuant thereto was 18, that a four level enhancement pursuant to U.S.S.G. § 2A3.2(b)(1) was appropriate because the minor victim was in defendant's custody, care or control, that a two level enhancement pursuant to U.S.S.G. § 2A3.2(b)(3) was appropriate because a computer or interactive computer service had been used to persuade, induce, entice or coerce the minor to engage in prohibited sexual conduct, and that a three level reduction for acceptance of responsibility was appropriate pursuant to U.S.S.G. § 3E1.1, thus yielding a total offense level 21.  Importantly, paragraph C.4 of the Plea Agreement explicitly stated: "The parties agree that a sentence at the upper end of the guideline range is reasonable in this case."  (emphasis added).

The Plea Agreement does not say that the "parties agree that a term of imprisonment at the upper end of the guideline range" would be reasonable. The parties' agreement that "a sentence at the upper end of the guideline range is reasonable" is not limited to the "imprisonment" component of the sentence, nor did defendant exclude the "supervised release" portion of his sentence from this "sentence at upper end of the guideline range" agreement.

The 46 month term of imprisonment arguably would have been unreasonable in the absence of the plea agreement, in which the parties agreed to the less punitive term of imprisonment calculated under the 2004 version of the Guidelines manual, rather than the earlier version which the Probation Office determined should have been applied. See Rulings on Defendant's Objection to Presentence Investigation Report (doc. no. 24).

The Court would not have accepted the very lenient term of imprisonment contemplated by the parties' stipulation to a total offense level of 21 at paragraph C.3 of the Plea Agreement if the parties had not, by the plain and unambiguous terms of the Plea Agreement, also endorsed a sentence at the upper end of the guideline range for supervision.

Lifetime supervision is not only within the "upper end" of the advisory guidelines range, which the parties agreed was reasonable, it is the recommended term of supervised release, as discussed more fully herein. U.S.S.G. § 5D1.2(b)(2).

### 3. Waiver of Right to Take Direct Appeal Unless the Government Appeals, the Sentence Exceeds Statutory Limits, or the Sentence "Unreasonably Exceeds the Guideline Range Determined by the Court under the Sentencing Guidelines"

Further, in paragraph A.9 of the Plea Agreement, defendant explicitly "waive[d] the right to take a direct appeal from his conviction or sentence under 28 U.S.C. §1291 or 18 U.S.C. §3742, subject to the following narrow exceptions:

(a)      If the United States appeals from the sentence, [defendant] may take a direct appeal from the sentence.

(b)      If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence <u>unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines</u>, [defendant] may take a direct appeal from the sentence.

## B. <u>Change of Plea Hearing</u>

At the hearing on defendant's change of plea, the Court advised the defendant, and defendant made it clear that he knew and understood, the following:

- that the maximum sentence the Court could impose under the law for the commission of the offenses and the conduct he admitted included a term of imprisonment of not more than thirty and a term of supervised release up to life;

- that the parties had agreed to the upper end of the advisory guideline range as an appropriate sentence;

- that the Court could reject the plea, in which case defendant would be allowed to withdraw his guilty plea;

- that except as otherwise specified in the plea agreement, defendant was giving up his right to appeal as well as any right to file a motion to vacate sentence under 28 U.S.C. §2255 for habeas corpus relief;

- the AUSA explained that the only two exceptions upon which defendant could appeal were if the sentence exceeded applicable limits, or if it exceeded "the guideline range determined by the Court under the sentencing guidelines." Change of Plea Transcript (doc. no. 38), at 26.

Defendant acknowledged his understanding of all of his rights and the consequences of his plea, as partially set forth above, including acknowledging that he was giving up his right to

appeal except as stated in his Plea Agreement.  Id. at 27.

## C.  Pre-Sentencing Procedure

### 1. The Scheduling Order

On July 7, 2005, this Court entered its standard scheduling order (doc. no. 20), stating as

follows:

> IT IS HEREBY ORDERED that pursuant to Local Criminal Rule 32.1, the probation office will prepare a pre-sentence investigation report.  Thereafter, the probation office will forward a copy of that report to defense counsel to review with his client prior to sentencing.  The probation office will also forward a copy of the report to the Assistant United States Attorney.

> If either party disputes facts contained in the report that are material to sentencing, it will be that party's obligation to seek administrative resolution of that matter through a pre-sentence conference with opposing counsel and the probation officer.  Thereafter, defense counsel and the Assistant United States Attorney will each file with the clerk of court, and serve upon opposing counsel and the probation office, their positions with respect to sentencing factors.  This pleading will be accompanied by a written statement certifying that filing counsel has conferred with opposing counsel and the probation office in an attempt to resolve any disputed matter.

> After receipt of the parties' positions, the reporting probation officer will make any necessary investigation and  revisions to the report.  In any event, the reporting probation officer will prepare an addendum to the report that sets forth any objection to the report that has been made by counsel but not resolved, together with the probation officer's comments.  The probation officer will certify that the report, any revisions thereto, and the addendum have been disclosed to the defendant and all counsel and that the addendum fairly sets forth all remaining objections.

### 2. The Presentence Report

The Presentence Report ("PSR") was prepared on September 19, 2005. The Offense

Conduct set forth at ¶¶ 8-17 went unchallenged by defendant, and the Court, accordingly, relied

on (but did not believe it was necessary to articulate, in light of the parties' agreement) the

undisputed facts and circumstances recited in arriving at an appropriate sentence at the upper end

of the guideline sentencing range.

Offense Conduct.  The relevant Offense Conduct includes: the minor victim in this case was only 13 years of age when defendant contacted her in an internet chat room; defendant commenced and maintained an electronic and telephone relationship with the victim, and told her he was 19 years old, later 22years old (she did not learn his real age, currently 52 years, until their first contact); in June 2004, defendant asked the minor victim if she would marry him; in August 2004, defendant traveled from Georgia to the Western District of Pennsylvania to have sexual relations with the victim, who by then was 15 years of age; defendant ingratiated himself to the victim's family by giving them cash, furniture and other valuable gifts while he was living with the victim's family and engaging in sexual contact with the victim (but not intercourse) on numerous occasions; defendant continued to try to contact the victim after he was told to leave her alone, threatened the victim's mother in an e-mail, and falsely claimed to be a member of the armed forces as well as a police officer before demanding that he be allowed to see the victim; defendant informed federal agents that he had been in contact with a 14 year old girl he met on-line, but he claimed he broke that off when he found out she was under age, and that he currently resided with a 26 year old woman whom he met on-line in February 2004.

Offender Characteristics.  The PSR also set forth relevant Offender Characteristics at ¶¶ 45-73, which also were unchallenged and, therefore, the Court relied on the undisputed facts and circumstances recited in arriving at an appropriate sentence at the upper end of the guideline sentencing range.  Said Offender Characteristics include several arrests but no convictions, including two charges of pointing a gun at another person in 1993 and 1998, and a former marriage to a woman who was 16 years of age when he met her on-line in 2003.  (To be sure,

defendant's Offender Characteristics includes positive information, such as support from his

community and family, and that he was apparently an active caretaker of the children of a woman

to whom he had previously been married.)

    <u>PART D. SENTENCING OPTIONS.  Supervised Release</u>.  Paragraphs 77 and 78 of the

PSR list the "Sentencing Options" for supervised release.  Paragraph 77 states that, pursuant to

statute, 18 U.S.C. ¶¶ 2422 and 3583(k), the Court could impose a sentence of "any term of years

to a maximum life term of supervised release . . . ."  Paragraph 78 specifies the Guideline

Provisions governing the sentencing guidelines range for a term of supervised release:

> The guideline range for a term of supervised release is at least 3 years but not more than 5
> years, pursuant to U.S.S.G. § 5D1.2(a)(1).  However, pursuant to U.S.S.G. § 5D1.2(b),
> the length of the term of supervised release shall not be less than the minimum term of
> years specified for the offense under Subdivisions (a)(1) through (3) and may be up to life
> if the offense is a sex offense, pursuant to U.S.S.G. § 5D1.2(b)(2).  The policy statement
> found in that section states, "<u>If the instant offense is a sex offense, however, the statutory
> maximum term of supervised release is recommended</u>."

PSR ¶ 78 (emphasis added).[1]

---

[1] U.S.S.G. § 5D1.2(b) provides, in its entirety:

> (b) Notwithstanding subdivisions (a)(1) through (3), the length of the term of
> supervised release shall be not less than the minimum term of years specified for
> the offense under subdivisions (a)(1) through (3) and <u>may be up to life, if the
> offense is</u> --
> (1) any offense listed in 18 U.S.C. § 2332b(g)(5)(B), the commission of which
> resulted in, or created a foreseeable risk of, death or serious bodily injury to
> another person; or
> (2) <u>a sex offense</u>.
> (Policy Statement) <u>If the instant offense of conviction is a sex offense, however,
> the statutory maximum term of supervised release is recommended</u>. (emphasis
> added).

### 3. Defendant's Objection to PSR

Defendant filed <u>only one objection</u> to the PSR (Objections, doc. no. 21), to the extent it relied on the 2003 version of the Sentencing Guidelines to calculate the appropriate sentence, because the parties had agreed in their Plea Agreement that the 2004 version applied. The 2003 version would have been more punitive as to the term of imprisonment. This Court agreed with defendant that the Probation Office was required to give the parties the benefit of their bargain, and sustained defendant's single objection to the PSR, on the following reasoning:

> The Probation Office used the 2003 Sentencing Guidelines Manual to calculate a total offense level 25, leading to an advisory guidelines range of 51 to 71 months based on defendant's criminal history category I. Under the 2004 sentencing guidelines, the advisory guidelines range is 37 to 46 months based on defendant's criminal history category I.

> Defendant objects to the use of the 2003 version of the guidelines because the 2004 version is "more favorable" to him, and therefore should be used, and because of the stipulations set forth in the plea agreement. The Court agrees with defendant that the parties are capable and competent to enter into a plea agreement specifying which version of the sentencing guidelines to be used and stipulating to various sentencing factors and even specific sentences or ranges (bounded by the statutory minimums and maximums). <u>See, e.g.</u>, <u>United States v. Bernard</u>, 373 F.3d 339, 345 (3d Cir. 2004) ("[p]lea agreements are contractual and therefore are to be analyzed under contract law standards") (<u>quoting</u> <u>United States v. Gilchrist</u>, 130 F.3d 1131, 1134 (3d Cir. 1997)) and <u>United States v. Moscahlaidis</u>, 868 F.2d 1357, 1361 (3d Cir. 1989).

> Under <u>Bernard</u>, this Court has the "authority to accept a plea agreement stipulating to a sentencing factor or a provision of the sentencing guidelines that otherwise would not apply, or specifying a sentence that falls outside the applicable guidelines range. <u>Once the District Court has accepted such an agreement, it is binding</u>." 373 F.3d at 344 (emphasis added). Accordingly, the Court will sustain defendant's objection, and sentence defendant according to the terms of the plea agreement.

Rulings on Defendant's Objection to Presentence Investigation Report (doc. no. 24) at 1-2 (emphasis in original).

### 4. Court's Ruling Regarding Scope of Sentencing Hearing

The Court's Rulings on Defendant's Objection to Presentence Investigation Report also noted as follows:

4. In arriving at an appropriate sentence, this Court always considers the numerous statutory factors set forth in section 3553. Thus, the Court attempts to arrive at a sentence that would be sufficient, but not greater than necessary: (a) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (b) to afford adequate deterrence; (c) to protect the public against commission of further crimes by this defendant; and (d) to provide the defendant with needed and effective educational or vocational training, medical care, or other correctional treatment.

Additionally, the Court considers all of the other factors set forth in 18 U.S.C. § 3553(a), including: the nature and circumstances of the offense and the defendant's history and characteristics; the kinds of sentences available for this offense; the sentencing guidelines range under the advisory guidelines adopted by the United States Sentencing Commission for the category of offense and defendant's criminal history; any applicable policy statements adopted by the Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

Important to this Court's determination of an appropriate sentence, but not dispositive, is the range derived from correct application of the guidelines, which requires this Court to rule on objections and consider the Probation Office's guidelines calculation. This factor then is considered along with all the other factors enumerated in section 3553. This calculation will inform, but not control, the Court's sentence.

5. Pursuant to Federal Rules of Criminal Procedure 32(i)(3)(B), this Court is required, with regard to any factual inaccuracy in the PSI, to make a finding as to each allegation or a determination that no such finding is necessary because the matter in controversy will not be taken into account in sentencing the defendant. Because neither party has challenged the accuracy of the Probation Office's report in any other respect, the Court will accept the accuracy of the fact findings of the PSI which are not in dispute. United States v. McDowell, 888 F.2d 285, 291 (3d Cir. 1989) ("A conclusion in the presentence investigation report which goes unchallenged by the defendant is, of course, a proper basis for sentence determination. In this respect, the report serves as a prima facie and sufficient showing of fact.").

The sentencing proceeding will proceed in accordance with the foregoing findings and rulings.

Rulings on Defendant's Objection to Presentence Investigation Report (doc. no. 24) at 3-4.

### 5. Defendant's Lack of Objections to Lifetime Term of Supervised Release

Defendant did not file written objections to the PSR in any other respect. Thus, he did not challenge any of the facts set forth in the PSR about the offense conduct or the offender characteristics, not did defendant challenge ¶¶ 77 and 78 of the PSR setting forth the calculation by the Probation Office that the statutory maximum term of lifetime supervision was recommended under the guidelines for this sex offense involving a minor.

### D. Sentencing Hearing

At the original sentencing hearing, and prior to imposition of sentence, counsel for defendant argued that this case was not a typical "sexual predator kind of case," and that it was a "consensual" relationship between defendant and the minor, even though she was only thirteen years of age when he started his internet relationship with her and 15 years of age when he started to have sexual contact with her. Counsel's arguments were made in the context of convincing the Court that the upper end range of imprisonment to which the parties had agreed, 46 months, was appropriate. Sentencing Transcript (doc. no. 36) at 8-13. Only after imposition of sentence did counsel mention or object to the lifetime term of supervised release, id. at 18-19, having not previously objected to that guidelines range calculation in the PSR, as required by Court Order and the Local Rules of Criminal Procedure LR Cr 32.1.C, D.

Although the United States Court of Appeals for the Third Circuit found that the term of supervised release was "Key" among the topics discussed at sentencing, defense counsel's

untimely objection consisted of a mere ten transcript lines of argument,[2] and counsel pointed to no <u>fact</u> in the PSR or elsewhere to show that the <u>recommended</u> guideline range of life for the supervised release portion of the sentence, as explicitly stated in paragraph 78 of the PSR and the Sentencing Guidelines, was not warranted.

Nevertheless, the Court of Appeals held that this Court had given insufficient reasoning for the lifetime term of supervised release and for its special condition prohibiting Kenrick from possessing sexually explicit materials during the term of his supervised release. The Court of Appeals stated that while it was "mindful that the 2004 Sentencing Guidelines expressly provide for the possibility of a lifetime term of supervised release for Kenrick's offense, inasmuch as the district court did not provide adequate reasons for its decision, we also will vacate this provision of the sentence and remand the case so that the court may reconsider this issue during Kenrick's resentencing as well." <u>Kenrick</u>, 241 Fed.Appx. at 17-18 (footnote 11 omittted).[3]

### E. Defendant's Appeal

Even though the "supervised release portion" of the sentence was within the guideline range (i.e., for life); even though a lifetime term of supervised release is the recommended sentence of supervised release for sex offenses under the guidelines; even though defendant did

---

[2] The argument consisted solely of counsel's personal opinion that this matter "is not a case where lifetime supervision is required," a statement that there was no evidence of any child pornography or pedophilia, and counsel's subjective belief that "a term of supervised release within the guidelines, combined with . . . [registration] as a sex offender, will be a sufficient check on him." Id. at 18. Counsel also expressed his concern that the government would be burdened with the costs of lifetime supervision. *Id*.

[3] In footnote 11, the Court of Appeals stated: "As our previous quotation from Kenrick's sentencing hearing makes clear, the district court offered little more than a paraphrasing of the section 3553(a) factors as justification for the sentence it imposed. See lines 179-204. We believe that this explanation is inadequate." 18 n. 11

not object to any of the facts or circumstances of the PSR or object to paragraph 78 which states

that a lifetime term of supervised release is the recommended sentence of supervised release for

sex offenses under the guidelines; even though defendant waived his right to appeal any sentence

that did not unreasonably exceed the guideline range (which supervised release for life did not);

and even though defendant unambiguously agreed that the Court could properly sentence "at the

upper end of the guideline range" which includes supervised release for life), defendant appealed

the "upper end of guidelines" "supervised release for life" portion of the sentence and other

conditions of supervised release, including the lifetime ban on possession of sexually explicit

materials.[4]

### F.  Mandate of Court of Appeals

The Court received the mandate from the Court of Appeals on September 12, 2007 (doc.

no. 40) which states: "ORDERED and ADJUDGED by this Court that the judgment of

conviction and sentence entered November 10, 2005, is vacated insofar as it imposes a lifetime

term of supervised release and prohibits Kenrick from possessing sexually explicit materials, and

the matter is remanded to the district court for resentencing." Thereafter, this Court scheduled a

resentencing hearing, finding it appropriate and helpful to solicit the views of counsel, the parties

and the Probation Office at a status conference on a number of questions, including the

following:

    1.     Should the plea agreement be set aside, since defendant objected to a

---

[4] The Court of Appeals for the Third Circuit affirmed other conditions of supervised release that defendant also challenged on appeal, namely, the collection of DNA materials at the direction of the Probation Office and requiring him to submit to polygraph examinations for purposes of determining compliance with the conditions of his supervised release.  Kenrick, 241 Fed.Appx. at 18-19.

guideline sentence on the term of the supervised release for life, where defendant in the plea agreement at paragraph C.1. expressly agreed that the Court could sentence defendant at the upper end of the guideline range?

2. Should the plea agreement be set aside since defendant appealed a guideline sentence on the term of supervised release, where the plea agreement at paragraph A.9. provided for no appeal of a guideline range sentence as defendant confirmed, under oath, at the guilty plea hearing. Transcript at 21-22 (doc. no. 38).

3. What evidence/testimony/expert witnesses did counsel offer at the original sentencing hearing relating to the appropriate length of the term of supervised release? What evidence/testimony/expert witnesses does counsel intend to offer at the resentencing hearing on the appropriate length of the term of supervised release?

4. What evidence/testimony/expert witnesses did counsel offer at the original sentencing hearing relating to the appropriate restrictions on computer use? What evidence/testimony/expert witnesses does counsel intend to offer at resentencing hearing relating to the appropriate restrictions on computer use?

Counsel for the government and defendant filed their memoranda with respect to resentencing on October 23 and 24, 2007, respectively (doc. nos. 46 & 47), setting forth their respective positions on these questions and resentencing. In their memoranda, neither defendant nor the government requested that the plea agreement be set aside, nor do the parties consider defendant to have breached the agreement by appealing the lifetime term or conditions of supervised release. At resentencing, the government indicated it intended to offer testimony of a case agent regarding facts and circumstances of the offense and defendant's background in support of a term of lifetime supervision, but would not offer any evidence supporting the condition of a lifetime ban on sexually explicit materials. The government essentially conceded that the lifetime prohibition on sexually explicit materials should not be imposed at resentencing. The Court of Appeals for the Third Circuit found that there were no reasons on the record that

might justify such a condition, and the government does not intend to offer any evidence that would justify that condition. Accordingly, the Court will eliminate this condition from defendant's sentence.

Defendant indicated he would rely "on the unique facts and circumstances of this case at the original sentencing hearing on the issue of the appropriate length of his supervised release term and intends to rely on those same unique facts and circumstances at resentencing. . . ." In other words, defendant would rely on the unchallenged facts and circumstances set forth in the PSR, which is what the Court relied upon in the first instance. See Rulings on Defendant's Objection to Presentence Investigation Report (doc. no. 24) at ¶¶ 4-5.

A status conference, with defendant present, was conducted on November 28, 2007, following which the Court permitted defendant to file a supplemental memorandum with regard to the issue of breach of plea agreement and remedy. In Defendant's Supplemental Memorandum with Respect to Resentencing (doc. no. 53), defendant asserts that the mandate issued by the United States Court of Appeals for the Third Circuit was narrow and that the remand is limited to two issues only, the term of lifetime supervision and the lifetime ban on sexually explicit materials and this Court's reasons for imposing those portions of the sentence. Thus, defendant argues, the Court has no authority to set aside the plea agreement, although it does have the authority to impose a sentence of lifetime supervision. Id. at 5-6.

## II.  Analysis

### A.  Penalty and Sentence Always Includes Supervised Release Component

#### 1.  The Plea Agreement

Defendant entered a plea of guilty to the offense set forth at 18 U.S.C. § 2423(b), which states, in relevant part: "A person who travels in interstate commerce . . . for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years or both."

The Court would have never approved the Plea Agreement in light of the very minimal agreed to term of imprisonment, i.e., the upper end of the 37 to 46 months advisory guidelines sentencing range under the 2003 version of the Guidelines, for this very serious offense involving sexual conduct with a minor over a substantial period of time whom defendant met in an internet chat room when she was but 13 years of age, if the Plea Agreement had not included two important provisions: (1) the Court could sentence the defendant to the upper end of the advisory guideline range (Plea Agreement at ¶ C.4) which obviously included the maximum penalty of "a term of supervised release up to life" (Plea Agreement at ¶ C.1(c)), and (2) defendant waived his right to appeal any sentence which did not unreasonably exceed the guideline range determined by the Court under the Guidelines, and since a lifetime term of supervised release is the recommended term of supervision for sex offenders like Mr. Kenrick, such sentence could not be deemed to exceed the guidelines range at all, let alone unreasonably exceed it.  See Plea Agreement at ¶ A.9(b).

Defendant now argues that these two provisions of the plea agreement applied only to the term of imprisonment but not to the term of supervised release.  However, nothing in the Plea

-15-

Agreement or advisory sentencing guidelines contains any such limitation. In common lexicon and usage, the words "penalty" and "sentence" always includes both the term of imprisonment and the term of supervised release as two of several components of a sentence. See Chapter 5 of the Sentencing Guidelines, which includes Probation (Part B), Imprisonment (Part C), Supervised Release (Part D), and Restitution, Fines, Assessments and Forfeitures (Part E), as the components of criminal sentences.

## 2. The Guilty Plea Colloquy

The Court in the guilty plea colloquy expressly included the supervised release component in the "maximum sentence" questioning (doc. no. 38 at 10-11) as follows:

> THE COURT: The maximum sentence I'm authorized to impose under the law for the commission of these crimes as you and the government have agreed and as set forth in your plea agreement is a term of imprisonment of not more than 30 years; a fine of $250,000; a term of supervised release up to life; a special assessment of $100; and mandatory restitution. Do you understand the sentence that the Court is authorized to impose?

> THE DEFENDANT: Yes, I do, Your Honor.

Nothing discussed at the Plea Hearing colloquy by counsel or by the Court suggested that the word "sentence" (as in "maximum sentence") described only one of many components of a sentence or that "sentence" excluded the supervised release, or any other, component of the sentence. If the language "sentencing at the upper end of the guideline range is reasonable" excluded the supervised release component of the sentence, the Court never would have approved the Plea Agreement at the Change of Plea hearing.

## 3. Waiver of Appellate Rights

Defendant also argues that the "waiver of appellate rights" only applies to the term of

imprisonment - - to the exclusion of the supervised release component, and interpretation of the

Plea Agreement that does not withstand review of its unambiguous terms. The Plea Agreement

states at paragraph A.9. as follows:

> Derrick Kenrick waives the right to take a direct appeal from his conviction or
> sentence under 28 U.S.C. §1291 or 18 U.S.C. §3742, subject to the following
> exceptions:
>
> > (a)  If the United States appeals from the sentence, Derrick Kenrick
> > may take a direct appeal from the sentence.
> >
> > (b)  If (1) the sentence exceeds the applicable statutory limits
> > set forth in the United States Code, or (2) the sentence
> > unreasonably exceeds the guideline range determined by
> > the Court under the Sentencing Guidelines, Derrick Kenrick
> > may take a direct appeal from the sentence.

Under defendant's interpretation, the waiver of right to appeal would only prohibit

appeals of "terms of imprisonment" unless one of the exceptions were activated. If "sentence"

applies to the term of imprisonment only, to the exclusion of the supervised release component,

any defendant could take an appeal from terms and conditions of supervision imposed pursuant

to any of the thousands of plea agreements containing this same waiver (which most guilty plea

agreements that come before this Court contain), as to the non-imprisonment components of the

sentences.

Further, the sentencing guidelines include the supervised release component in the

"sentence" analysis. See Chapter 5 of the Sentencing Guidelines, which includes Probation (Part

B), Imprisonment (Part C), Supervised Release (Part D), and Restitution, Fines, Assessments and

Forfeitures (Part E), as components of criminal sentences. As previously noted, Part D. of the

"Sentencing Options" section of the Presentence Report in this case, at 17-18, lists the following

information:

**Custody**

74. **Statutory Provision:** The maximum term of imprisonment is 30 years, pursuant to 18 U.S.C. §2423(b). The offense of conviction is a Class B felony.

75. Guideline Provisions: Pursuant to U.S.S.G., Chapter 5, Part A, based on a total offense level of 25 and a criminal history category of I, the guideline range for imprisonment is 57 to 71 months.

**Impact of Plea Agreement**

76. As previously noted in paragraph 7 of this report, the plea agreement incorrectly sets forth the applicable edition of the Sentencing Guidelines Manual to be used in this case. Consequently, the guideline calculations contained within the plea letter were determined incorrectly. Nonetheless, the parties are committed to the stipulations set forth in the plea letter. Consequently, both parties agree that the appropriate sentence for the defendant in this case is at the upper end of the applicable sentencing range of 37 to 46 months based on a total offense level of 21 and a criminal history category of I, irregardless of the range determined by the correct application of the guidelines, which results in a more punitive sentence than what the parties believed to be appropriate in this case.

**Supervised Release**

77. **Statutory Provisions:** Since the offense of conviction is a Class B felony, the authorized term of supervised release is not more than 5 years, pursuant to 18 U.S.C. §3583(b)(1). However, since the defendant was convicted of 18 U.S.C. §2422, the Court may impose any term of years to a maximum life term of supervised release, pursuant to 18 U.S.C. §3583(k).

78. Guideline Provisions: The guideline range for a term of supervised release is at least 3 years but not more than 5 years, pursuant to U.S.S.G. §5D1.2(a)(1). However, pursuant to U.S.S.G. §5D1.2(b), the length of the term of supervised release shall not be less than the minimum term of years specified for the offense under Subdivisions (a)(1) through (3) and may be up to life if the offense is a sex offense, pursuant to U.S.S.G. §5D1.2(b)(2). The policy statement found in that section states, "If the instant offense is a sex offense, however, the statutory maximum term fo supervised release is recommended." (emphasis added.)

<u>**Probation**</u>

79.    **Statutory Provisions:** The defendant is not eligible for probation because the instant offense is a Class B felony, pursuant to 18 U.S.C. §3561(c)(1).

80.    **Guideline Provisions:** The defendant is not eligible for probation because the instant offense is a Class B felony, pursuant to U.S.S.G. § 5B1.1(b)(1).

81.    **Statutory Provisions:** The maximum fine is $250,000, pursuant to 18 U.S.C. §3571. A special assessment of $100 is mandatory, pursuant to 18 U.S.C. §3013.

82.    **Guideline Provisions:** The fine range for the instant offense is from $10,000 to $100,000, pursuant to U.S.S.G. §5E1.2(c)(3).

<u>**Restitution**</u>

83.    **Statutory Provisions:** Restitution is not an issue in this case.

The PSR thus explicitly includes "Supervised Release" as part of the "Sentencing Options" in addition to "Custody." Part D. of the PSR, "Sentencing Options," includes the statutory and guidelines provisions for imprisonment, supervised release, fines and restitution (where applicable), all components of a federal <u>sentence</u> and all listed in this Court's Judgment and Commitment Order (doc. no. 27) as part of his sentence. It is unreasonable, if not disingenuous, to claim that the term of supervised release or the conditions of supervision are not part of the sentence. Had this argument been made at the appropriate time, a great expenditure of time and judicial resources could have been avoided.

### B. <u>Standard for Setting Aside Plea Agreement</u>

As this Court stated when it granted defendant's objections to the Presentence Report, plea agreements are contracts, and are to be analyzed pursuant to contract law. Rulings on Defendant's Objection to Presentence Investigation Report (doc. no. 24) at ¶ 3, citing, inter alia,

United States v. Bernard, 373 F.3d 339 (3d Cir. 2004) and United States v. Moscahlaidis, 868

F.2d 1357 (3d Cir. 1989).

Although it is a contract in every way, a plea agreement is *sui generis* in that it must be

approved by the Court before it can be effectuated and performed.

Rule 11 of the Federal Rules of Criminal Procedure provides in relevant part:

Rule 11. Pleas

(a) Entering a Plea.
(1) In General. A defendant may plead not guilty, guilty, or (with the
court's consent) nolo contendere.
* * *
(3) Nolo Contendere Plea. Before accepting a plea of nolo contendere, the
court must consider the parties' views and the public interest in the effective
administration of justice.

* * *
(b) Considering and Accepting a Guilty or Nolo Contendere Plea.
(1) Advising and Questioning the Defendant. Before the court accepts a
plea of guilty or nolo contendere, the defendant may be placed under oath, and the
court must address the defendant personally in open court. During this address,
the court must inform the defendant of, and determine that the defendant
understands, . . . [a panoply of trial rights and constitutional protections, including
"(N) the terms of any plea-agreement provision waiving the right to appeal or to
collaterally attack the sentence."

(2) Ensuring That a Plea Is Voluntary. Before accepting a plea of guilty or
nolo contendere, the court must address the defendant personally in open court
and determine that the plea is voluntary and did not result from force, threats, or
promises (other than promises in a plea agreement).

(3) Determining the Factual Basis for a Plea. Before entering judgment on
a guilty plea, the court must determine that there is a factual basis for the plea.

(c) Plea Agreement Procedure.
(1) In General. An attorney for the government and the defendant's
attorney, or the defendant when proceeding pro se, may discuss and reach a plea
agreement. The court must not participate in these discussions. If the defendant
pleads guilty or nolo contendere to either a charged offense or a lesser or related

offense, the plea agreement may specify that an attorney for the government will:

* * *

(C) <u>agree that a</u> specific sentence or <u>sentencing range is the appropriate disposition</u> of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

* * *

(3) Judicial Consideration of a Plea Agreement.

(A) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.

(B) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request.

(4) Accepting a Plea Agreement. If the court accepts the plea agreement, it must inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the agreed disposition will be included in the judgment.

(5) Rejecting a Plea Agreement. If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):

(A) inform the parties that the court rejects the plea agreement;

(B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and

(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

Fed.R.Crim 11.

Because a plea agreement is unlike most other contracts in requiring court approval pursuant to an elaborate mechanism to ensure that the defendant completely understands the consequences of entering a plea of guilty or nolo contendere, a defendant cannot simply change

his mind after entering such a plea.  Rather, withdrawal of a knowing, voluntarily and intelligent

guilty plea is permitted only in very limited circumstances.  Fed.R.Crim. 11(d), Withdrawing a

Guilty or Nolo Contendere Plea.  The United States Court of Appeals for the Third Circuit

summarized the standards for permitting withdrawal of a guilty plea in the Third Circuit, as

follows:

> "If a motion for withdrawal of a plea of guilty or nolo contendere is made
> before a sentence is imposed . . . the court may permit withdrawal of the plea upon
> a showing by the defendant of any fair and just reason." United States v. Martinez,
> 785 F.2d 111, 114 (3d Cir. 1986).  This court has held that withdrawal of a guilty
> plea is not an absolute right. See, e.g., United States v. Brown, 250 F.3d 811 (3d
> Cir. 2001); . . .  We must look primarily to three factors in evaluating a motion to
> withdraw a guilty plea: "(1) whether the defendant asserts his innocence; (2) the
> strength of the defendant's reasons for withdrawing the plea; and (3) whether the
> government would be prejudiced by the withdrawal."  United States. v. Jones, 336
> F.3d 245, 252 (3d Cir. 2003). We review a district court's decision to deny a
> motion for withdrawal of a guilty plea for abuse of discretion. Brown, 250 F.3d at
> 815.

United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005).

It is especially difficult to withdraw a plea after defendant has been sentenced based upon

a plea agreement that has been accepted by the district court.  See Fed.R.Crim 11(e), Finality of a

Guilty or Nolo Contendere Plea ("After the court imposes sentence, the defendant may not

withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal

or collateral attack.").

In United States v. Nolan-Cooper, 155 F.3d 221 (3d Cir. 1998), the Court of Appeals for

the Third Circuit summarized the analysis for determining whether a party has breached a plea

agreement, and if so, the proper remedy, as follows:

> Pursuant to the approach laid out in United States v. Moscahlaidis, 868 F.2d
> 1357, 1360 (3d Cir.1989), our analysis will proceed in three steps. First, we will

identify the terms of the agreement and the alleged improper conduct of the government. Second, we will determine whether the government violated its obligations under the plea agreement. Third, we will fashion an appropriate remedy for any violations that occurred. Nolan-Cooper has pointed to, and we will address, three separate breaches.

Before we assess the present claims, however, we will set forth the applicable legal precepts, which are well-established. The basic statement of the law comes from Santobello v. New York, 404 U.S. 257, 262-63, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971):

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

Because the defendant, by entering into the plea, surrenders a number of her constitutional rights, "courts are compelled to scrutinize closely the promise made by the government in order to determine whether it has been performed." United States v. Hayes, 946 F.2d 230, 233 (3d Cir.1991). Moreover, "the doctrine that the government must adhere to its bargain in the plea agreement is so fundamental that even though the government's breach is inadvertent and the breach probably did not influence the judge in the sentence imposed, due process and equity require that the sentence be vacated." Id. (internal quotations omitted).

Plea agreements, although arising in a criminal context, are analyzed under contract law standards. See Moscahlaidis, 868 F.2d at 1361. In determining whether the plea agreement has been breached, courts must determine "whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty." United States v. Badaracco, 954 F.2d 928, 939 (3d Cir.1992) (citing United States v. Nelson, 837 F.2d 1519, 1521-22 (11th Cir.1988)). Accordingly, we will not permit the government to rely upon a "rigidly literal" approach to the construction of the terms of the plea agreement. See Moscahlaidis, 868 F.2d at 1361. For example, we have recently held that even when the government is given wide discretion whether to file a U.S.S.G. § 5K1.1 (substantial assistance) motion pursuant to a plea agreement, the district court is empowered to examine for "good faith" the government's refusal to file such a motion. See United States v. Isaac, 141 F.3d 477, 483-84 (3d Cir.1998).

<u>Nolan-Cooper</u>, 155 F.3d at 235-36.

Although <u>Nolan-Cooper</u>, and indeed, many if not most of the breach of plea agreement cases, arise in the context of an alleged breach by the government, typically in advocating for or against a particular sentence after agreeing not to take a position, a plea agreement imposes mutual obligations on both parties, and there is no reason to believe that these contract principles are to be applied against the government only. Given the very different positions of the parties and the constitutional rights that attend the accused, however, the possible remedies for breach by the defendant might differ from those available for the government's breach, which generally allow the defendant to elect specific enforcement or withdrawal of the plea agreement. See <u>Nolan-Cooper</u>, 155 F.3d at 241 ("When the government breaches a plea agreement, the general rule is to remand the case to the district court for a determination whether to grant specific performance or to allow withdrawal of the plea.").

## C. <u>Breach of the Plea Agreement in This Case</u>

Under all of the foregoing standards, the Court considers defendant's appeal of his term of lifetime supervision to have breached the plea agreement because that term did not exceed the guidelines at all, let alone unreasonably so, and was at the upper end of the guidelines range for supervised release, to which the parties agreed. The Court imposed a "sentence" "below the advisory guideline range" on the imprisonment component[5] <u>only</u> because the Plea Agreement authorized the Court to sentence defendant to "supervised release up to life," and also barred defendant from appealing the supervised release for life because he agreed said sentence was

---

[5] That is, under the 2003 guidelines that would have been applied had the parties not agreed to the 2004 version, the range would have been 57 to 71 months.

"reasonable" and that he would not appeal a sentence within the sentencing guidelines. If the matter were before the Court on an unlimited remand mandate for resentencing, this Court would make a definitive ruling on that issue and proceed to the question of the appropriate remedy, which probably would have been setting aside the plea agreement.

However, although the Court finds that defendant breached the plea agreement when he appealed the term of lifetime supervision, the Court agrees with defendant that the limited mandate by the Court of Appeals for the Third Circuit precludes this Court from considering the effect of defendant's breach of the plea agreement on the continuing vitality of the plea agreement for purposes of this resentencing proceeding.

### D. A Lifetime Term of Supervision Is Within the Sentencing Guidelines and Within the Terms of the Plea Agreement

As painstakingly recited above, however, the lifetime term of supervised release is the appropriate supervised release sentence because: (i) it is within the guidelines and the applicable policy statements; (ii) it falls squarely within, and is a sentence at, the upper end of the guidelines range as agreed by the parties in the clear and unambiguous terms of their Plea Agreement; and (iii) the lifetime term of supervised release counterbalances the very lenient term of imprisonment, 46 months, which this Court would not have approved in the absence of the maximum period of supervision.

Where the written terms of a contract are plain and unambiguous and can only be read in one way, the court will interpret the contract as a matter of law. Stendardo v. Federal Nat'l Mort. Ass'n., 991 F.2d 1089, 1094 (3d Cir. 1993). The threshold question, also for the court to resolve, is whether the terms of the contract are ambiguous, and if they are, then it is for the fact finder to

resolve the ambiguity in light of all extrinsic evidence. <u>Stendardo</u>, 991 F.2d 1094; <u>Hullett v. Towers, Perrin, Forster & Crosby, Inc.</u>, 38 F.3d 107, 111 (3d Cir. 1994).

Federal common law follows these well settled principals of contract interpretation: i.e., the court will interpret the contract in accordance with its plain, unambiguous meaning; giving effect to the clear language of the contract and refraining from torturing the language to create ambiguities. " <u>Linder & Associates, Inc. v. Aetna Cas. & Sur. Co.</u>, 166 F.3d 547, 550 (3d Cir. 1999), citing <u>Selko v. Home Ins. Co.</u>, 139 F.3d 146, 152 n. 3 (3d Cir. 1998) (quotations omitted).

As the Court of Appeals for the Third Circuit stated in the seminal <u>Mellon Bank, N.A. v. Aetna Business Credit, Inc.</u>, 619 F.2d 1001, 1009 (3d Cir.1980), "[c]ourts are left with the difficult issue of determining as a matter of law which category written contract terms fall into, clear or ambiguous," and there comes "a point at which interpretation becomes alteration of the written contract." <u>Mellon Bank,</u> 619 F.2d at 1011 (certain citations omitted). The Court of Appeals explained:

> It is the role of the judge to consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning. The trial judge must then determine if a full evidentiary hearing is warranted. If a reasonable alternative interpretation is suggested, even though it may be alien to the judge's linguistic experience, objective evidence in support of that interpretation should be considered by the fact finder.

<u>Id.</u> (citations omitted).

To decide whether a contract is ambiguous, the court must not simply determine whether, from its point of view, the language is clear; instead, the court must "hear the proffer of the parties and determine if there [are] objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." <u>Sheet Metal Workers</u>

v. 2300 Group, Inc., 949 F.2d 1274, 1284 (3d Cir.1991), quoting Mellon Bank, 619 F.2d 1011.

When a party maintains that plain words of a document are ambiguous, "that party must be able to point to a reasonable alternative interpretation for the ambiguity." Perry v. Sonic Graphic Systems, Inc., 94 F.Supp.2d 616, 619-20 (E.D.Pa. 2000), citing Mellon Bank, 619 F.2d 1012 n.13.  "The Court is not required to entertain unreasonable interpretations of potentially ambiguous contract terms." Perry, 94 F.Supp.2d  620 ("As the Court finds Sonic's proposed interpretation to be unreasonable, and as the Court cannot find any reasonable interpretation of the phrase "local distribution" that would embrace areas as far away from Pennsylvania as Oregon, the Court does not find that this phrase opens the door to the admission of parol evidence.").

Before making a finding concerning the existence or absence of ambiguity, the court will consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation, which evidence "may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning." Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993). And, once a contract provision is found to be ambiguous, extrinsic evidence must be considered to clarify its meaning. Hullett, 38 F.3d 111(3d Cir. 1994). But this approach does not authorize a court "to demote the written word to a reduced status in contract interpretation. Although extrinsic evidence may be considered under proper circumstances, the parties remain bound by the appropriate objective definition of the words they use to express their intent." Mellon Bank, 619 F.2d at 1013. Accordingly, parties will be "held to definitions given to words in specialized commercial and trade areas in which they deal," and

words that have attained "binding definition[s] as legal terms of art" will be so defined. Id.

In Sanford Invest. Co. v. Ahlstrom Machinery Holdings, Inc., 198 F.2d 415 (3d Cir. 1999), the Court of Appeals for the Third Circuit heard from the lawyers, and decided it did not have to see any extrinsic evidence because the lawyers' alternative interpretations of the seemingly plain meaning of the disputed terms of a letter of intent were not reasonable, in light of the language of the several related, complementary documents involved in the complicated commercial litigation dispute. See also Perry (court not required to "entertain unreasonable interpretations of potentially ambiguous contract terms").

So too in this case, the interpretation offered by defendant -- that "sentence" did not include an integral part of the sentence -- is simply not reasonable. To interpret the Plea Agreement in the manner suggested by counsel would be to alter its explicit terms, not interpret them. The term "sentence" is a term of settled meaning and common usage in the federal criminal sentencing system, and is one with which counsel and the courts are quite familiar. It includes imprisonment, but obviously, is never limited to the term of imprisonment only; to the contrary, "sentence" includes not only imprisonment but also the terms and conditions of supervised release, fines, restitution and special assessment. See U.S.S.G. Chapter Five.

Thus, there is no ambiguity in the term "sentence" in the Plea Agreement in this case. The Court also notes that, although he argued the term "sentence" at the upper end of the guidelines range was intended only to apply to one component of the sentence, the imprisonment component, and therefore the Plea Agreement is ambiguous, counsel proffered no actual extrinsic evidence to support his claim that the parties did not intend to include the term of supervised release within the meaning of "sentence" at the upper end of the guidelines range.

**E. Additional Findings**.

The Court did not recite the specific facts and circumstances appearing in the PSR as reasons for imposing a term of lifetime supervision at the initial sentencing hearing because, as far as this Court was aware, the parties had agreed to that term of supervised release since it is a guidelines sentence and at the upper end of the guidelines range for supervised release, and defendant filed no objections to the calculation made in the PSR including that lifetime supervision was the preferred term of supervision for sex offenders such as defendant. Apparently, the Court of Appeals does not consider it sufficient for the sentencing judge to rely on the plea agreement and the parties' lack of objections to the PSR in arriving at appropriate sentences. But see <u>Gall v. United States</u>, ___ U.S. ___, 2007 WL 4292116, at *9 (December 10, 2007) ("Contrary to the Court of Appeals' conclusion, the District Judge plainly did consider the seriousness of the offense. . . . . It is true that the District Judge did not make specific reference to the (unquestionably significant) health risks posed by ecstasy, but the prosecutor did not raise ecstasy's effects at the sentencing hearing. Had the prosecutor raised the issue, specific discussion of the point might have been in order, but it was not incumbent on the District Judge to raise every conceivably relevant issue on his own initiative.").

To elaborate on this Court's factual reasons for finding the lifetime term of supervision agreed to by the parties and recommended by the guidelines appropriate, the unchallenged facts about the offense and the offender contained in defendant's PSR indicate that he had a penchant for meeting girls and young women on the internet, some of them underage, and establishing relationships with them by using ruses and by traveling to their residences and maintaining on-line communication. The victim in this case was only 13 when defendant, over 40 years older,

established communication with her, came to visit and have sexual contact with her at 15, and engaged in an elaborate scheme to ingratiate himself with her neglectful parents in order to serve his perverse sexual desires.

Additionally, the government called Special Agent Gregory Craig to the stand at the resentencing hearing to embellish the unchallenged facts set forth in the PSR about defendant's proclivity to meet young girls on internet chat rooms (in particular, at a website called "Pogo.com," wherein participants play checkers and other games on line), deceive them through various ruses designed to garner their sympathy (such as that he had been in a serious accident), and travel to their home states to meet them. Defendant, now 52 years of age, has met a 14 year old girl, a 13 year old girl and a 16 year old girl on-line, and has had sex with the child victim in this case and married another one, all in the last five years. SA Craig also testified that the child victim in this case and her mother are afraid that when defendant gets out of prison, he will harass them, as he already has done. The child victim has begun to take martial arts lessons to protect herself from defendant.

The Court finds SA Craig's testimony reliable and consistent with the unchallenged facts stated in the PSR.

The Court also rejects defendant's argument at the resentencing hearing that the fact that defendant used his real name and did not conceal his identity when he preyed on young girls is commendable, and somehow should qualify him for a variance from the recommended lifetime term of supervised release. While it may be true that defendant used his real name, he also engaged in fairly elaborate deceptions in his attempts to met these girls and their families, and he used various ruses, including claiming to be in law enforcement and in the military.

The Court has also observed defendant's demeanor on several occasions and finds that he has displayed no outward signs of sincere remorse or acknowledgment of his responsibility for and the seriousness of his offense. In fact, even now at the resentencing hearing, defendant suggests (through counsel) that the victim's family may be concerned about him not out of fear, but because he believes they owe him money for the gifts he bestowed upon them in his attempt to curry favor.

The evidence and argument made at the resentencing hearing offers substantial additional support for the lifetime term of supervised release.

The Court finds that lifetime supervision is the appropriate term of the supervised release component of defendant's sentence in this case, notwithstanding defendant's specific arguments against lifetime supervision which the Court does not find persuasive. Defense counsel's subjective opinion that such a term of supervision is unwarranted and unnecessary is just that, his subjective opinion. The fact that there was no evidence of child pornography found with defendant is a *non sequitur*, inasmuch as additional charges or aggravating factors would probably have ensued if such evidence had been found. Defense counsel also argued at the initial sentencing hearing that no evidence of pedophilia had been found, but "sexual perversion in which children are the preferred sex object" is the very definition of pedophilia, see Merriam-Webster's Collegiate Dictionary, Tenth Edition, and it certainly applies to defendant's behavior herein.

In conclusion, in consideration of the foregoing facts and circumstances in light of the section 3553(a) factors, the Court determines that the lifetime term of supervised release recommended by the Sentencing Commission is sufficient, but not greater than necessary, for the

sentence (a) to reflect the seriousness of the offense involving sexual contact with a minor victim, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence, especially important in light of defendant's apparent pattern of internet trolling and meeting young females; (c) to protect the public against commission of further crimes by this defendant, including the victim and her family; and (d) to provide the defendant with needed and effective monitoring and supervision upon his release from prison.

### F.  Lifetime Ban on Sexually Explicit Materials

The government has conceded that Condition No. 5 of supervised release, which prohibits defendant from possessing "any pictures, photographs,  books, writings, drawings, DVDs, video games, or other similar materials, depicting or describing 'sexually explicit conduct'" as defined at title 18, United States Code, Section 2256(2), is not supported by the existing record, and it offers no evidence to attempt to support the condition.  In light of the government's acquiescence and the decision of the Court of Appeals for the Third Circuit, this Court will eliminate said condition from the conditions of defendant's supervised release.

An appropriate Order Modifying Defendant's Sentence in accordance with these Rulings and Findings will be entered.

### G.  Appellate Rights

Defendant is advised of the following appeal rights:

(1) Defendant has have the right to appeal from the rulings of the court and the judgment of sentence as modified herein.

(2) Defendant has the right to have a lawyer represent him for such an appeal at no cost to him.

(3) Certified copies of the necessary records and transcripts will be paid for by the United States government.

(4) Any notice of appeal must be filed within ten (10) days from the day the order Modifying Sentence is filed, or defendant will lose his right to appeal.

(5) At defendant's timely request, the Clerk of Court will immediately prepare and file a notice of appeal on his behalf. Defendant must notify the Court promptly, through counsel, if he wished the Clerk of Court to prepare and file the notice of appeal on his behalf.


                                     s/ Arthur J. Schwab
                                    Arthur J. Schwab
                                    United States District Judge


cc:      All counsel of record